```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
AVROHOM GERSTLE and PHILLIP
COUSER, on behalf of
himself and all others
similarly situated

                    Plaintiffs,          OPINION

        -against-                        12 CIV 07593 (MGC)
                                         13 CIV 02542 (MGC)

NATIONAL CREDIT ADJUSTERS, LLC, a
Kansas Limited Liability Company;
INTERNATIONAL FINANCIAL SERVICES,
INC., a Kansas Corporation;
RICHARD E. SMITH, Individually and
in His Official Capacity with
NATIONAL CREDIT ADJUSTERS, LLC and
INTERNATIONAL FINANCIAL SERVICES,
INC.; MARK L. HUSTON, Individually
and in His Official Capacity with
NATIONAL CREDIT ADJUSTERS, LLC and
INTERNATIONAL FINANCIAL SERVICES,
INC.; BRADLEY E. HOCHSTEIN,
Individually and in His Official
Capacity with NATIONAL CREDIT
ADJUSTERS, LLC; MARK FLETCHALL,
Individually and in His Official
Capacity with NATIONAL CREDIT
ADJUSTERS, LLC; KEVIN EMMERICH,
Individually and in His Official
Capacity with NATIONAL CREDIT
ADJUSTERS, LLC; CHARLES HYTER,
Individually and in His Official
Capacity with NATIONAL CREDIT
ADJUSTERS, LLC; JACKIE FAGAN,
Individually and in Her Official
Capacity with NATIONAL CREDIT
ADJUSTERS, LLC.

                    Defendants.

-----------------------------------X
```

APPEARANCES:

    EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
    Attorneys for Plaintiffs

    By: Tiffany N. Hardy


    LAW OFFICES OF MARK F. VIENCEK
    Attorneys for Plaintiffs

    By:   Mark F. Viencek


    LAW OFFICE OF WILLIAM F. HORN
    Attorneys for Plaintiffs

    By:   William F. Horn


    KLEINMAN, LLC
    Attorneys for Plaintiffs

    By:   Abraham Kleinman


    DAVIDSON FINK LLP
    Attorneys for Defendants National Credit Adjusters, LLC;
    International Financial Services, Inc.; Mark Fletchall;
    Kevin Emmerich; Charles Hyter; and Jackie Fagan

    By:   Glenn M. Fjermedal, Andrew M. Burns, Curtis A. Johnson


    POLSINELLI PC
    Attorneys for Defendants International Financial Services,
    Inc.; Richard E. Smith; Mark L. Huston; Bradley E.
    Hochstein; and Mark Fletchall


    By:   Jason Nagi, Paul D. Sinclair, Mark. A. Olthoff, Todd
        H. Bartels

**Cedarbaum, J.**

Plaintiffs Avrohom Gerstle and Phillip Couser bring this putative class action against defendants National Credit Adjusters, LLC ("NCA"), International Financial Services, Inc. ("IFS"), Richard Smith, Mark Huston, Bradley Hochstein, Mark Fletchall, Kevin Emmerich, Charles Hyter, and Jackie Fagan alleging the collection, or attempted collection, of usurious debt.  All defendants except NCA move to dismiss the Third Amended Class Action Complaint for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).  That motion is granted except as to defendant Fagan.  All defendants also move to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  That motion is considered only as to the claims against defendants over whom the Court has personal jurisdiction: NCA and Fagan.  The 12(b)(6) motion is granted as to Count II, New York deceptive business practices law.  There is no need to consider the 12(b)(6) motion as to Count IV, Racketeer Influenced and Corrupt Organizations Act ("RICO"), because that claim is not alleged against NCA and Fagan.  The motion is denied as to Count I, Fair Debt Collection Practices Act ("FDCPA"), and Count III, New York civil usury law.

## I. BACKGROUND

### A. Allegations of the Complaint

According to the Complaint, NCA, a purchaser and collector of consumer debts, acquired two "payday" loans made to plaintiff Gerstle and one "payday" loan made to plaintiff Couser. Each of these loans carried an interest rate over thirty-two percent. On January 27, 2012 and June 21, 2012, letters bearing an NCA letterhead and defendant Fagan's typewritten signature were sent to plaintiff Gerstle at a New York address. The letters purported to be "communication[s] . . . from a debt collector" attempting "to collect a debt." The two letters are attached to the Complaint.[1]

On August 16, 2012, an unsigned letter bearing the NCA letterhead purporting to be from "a debt collector attempting to collect a debt," was sent to plaintiff Couser at a New York address. That same day, NCA "presented for payment from Couser's checking account" what the Complaint calls a "telephone check" for $125. Although Couser did not authorize that check, Couser's bank paid $125 to NCA from his account. The letter and the check are attached to the Complaint.

---

[1] Plaintiffs also allege that Fagan sent another collection letter to Gerstle on March 29, 2012, regarding a loan with an interest rate over thirty-two percent, but plaintiffs do not attach that letter.

4

As to the remaining defendants, IFS is the "sole manager" of NCA and has "complete authority to direct [NCA's] affairs."

Smith is the President of IFS and an investor of NCA. He "authorized and permitted NCA to collect usurious loans," and "personally implemented . . . and oversaw the illegal policies and procedures used by other employees of IFS."

Huston is the Chief Financial Officer of NCA. He "authorized and permitted NCA to collect usurious loans from Plaintiff."

Fletchall is the General Counsel of NCA. He "authorized and permitted NCA to collect usurious loans from the Plaintiff."

Emmerich is the Operations Manager of NCA. He "charged . . . and received money as interest on loans at a rate exceeding" thirty-two percent.

Hyter is the Regulatory Compliance Officer at IFS. He "personally implemented . . . and oversaw the illegal policies and procedures used by other employees of NCA" and collected "money as interest on loans at a rate exceeding" thirty-two percent.

Fagan is a manager at NCA and her "typewritten signature appears on the letters received by Gerstle from NCA."

Hochstein's position is not specified. He "personally approved and authorized" the collection of usurious loans by NCA.

5

Huston, Fletchall, Hyter, and Hochstein each submitted debt collection license applications on behalf of NCA to the City of New York. Smith signed NCA's debt collection license with the City of New York. The individual defendants are all residents of Kansas, and NCA and IFS are located in Kansas.[2]

### B. Procedural History

Couser initially brought suit in the Western District of New York on October 5, 2012. Gerstle filed separately in this Court on October 11, 2012. Couser's case was transferred, by agreement of the parties, to this Court, and the two plaintiffs filed their First Amended Class Action Complaint on October 3, 2013. Defendants moved to dismiss on December 13, 2013. Plaintiffs subsequently proposed a Second Amended Class Action Complaint that was never filed. The motion to dismiss was denied in part and granted in part with leave to amend on June 26, 2014. Plaintiffs filed a Third Amended Class Action Complaint on July 10, 2014. Defendants' motion to dismiss that complaint is now pending.

---

[2] Defendants move to strike certain "impertinent and irrelevant" allegations from the Complaint. Motions to strike are disfavored and are only granted "if there is strong reason to do so." Lipsky v. Commonwealth United Corporation, 551 F.2d 887, 893 (2d Cir. 1976). Because defendants have not indicated any prejudice they will suffer if the allegations in question are permitted to stand, see Roe v. City of New York, 151 F. Supp. 2d 495, 510 (S.D.N.Y. 2001), the motion to strike is denied.

6

## II. DISCUSSION

### A. Standard of Review

On a motion to dismiss pursuant to Rule 12(b)(2), decided on the basis of pleadings and affidavits without an evidentiary hearing, a plaintiff need only make a prima facie showing of jurisdiction. MacDermid, Inc. v. Deiter, 702 F.3d 725, 727 (2d Cir. 2012). Allegations "are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor . . . ." A.I. Trade Fin., Inc. v. Petra Bank, 989 F.2d 76, 79-80 (2d Cir. 1993).

On a motion to dismiss pursuant to Rule 12(b)(6), the factual allegations in the complaint are accepted as true, and all reasonable inferences are drawn in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The complaint need only include "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).[3]

---

[3] Both sides attach extensive materials to their motions, including affidavits, agreements, and newspaper articles. These materials are considered to the extent they are relevant to the 12(b)(2) motion. Although the underlying contracts for the

7

### B. Motion to Dismiss Pursuant to Rule 12(b)(2) for Lack of Personal Jurisdiction

Personal jurisdiction analysis involves two inquiries: first, is there jurisdiction under the applicable statute; second, does the exercise of jurisdiction comport with due process. Grand River Enters. Six Nations, Ltd. v. Pryor, 425 F.3d 158, 165 (2d Cir. 2005). In a federal question case where, as here, the federal statute does not provide for national service of process, courts apply the law of the forum state.[4] PDK Labs, Inc. v. Friedlander, 103 F.3d 1105, 1108 (2d Cir. 1997). Thus New York's statutory law applies in this case, permitting jurisdiction over a nondomiciliary who, "in person or through an agent . . . transacts any business within the state" and the "cause of action aris[es] from" that conduct. N.Y. C.P.L.R. 302(a).

As to the due process prong, jurisdiction over a nonresident is proper where 1) "the defendant has sufficient minimum contacts with the forum" and 2) "the assertion of

---

loans at issue -- which defendants submit -- could be taken into consideration on the 12(b)(6) motion, see Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002), they are not necessary to deciding the motion.

[4] Although RICO authorizes nationwide service of process under 18 U.S.C. § 1965(b), there must first be proper jurisdiction over one defendant under § 1965(a) before § 1965(b) is triggered. PT United Can Co. v. Crown Cork & Seal Co., 138 F.3d 65, 71 (2d Cir. 1998). No defendant named in the RICO count here has the required minimum contacts with New York to invoke § 1965(b).

personal jurisdiction is reasonable under the circumstances of the particular case." Porina v. Marward Shipping Co., 521 F.3d 122, 127 (2d Cir. 2008) (internal quotation marks omitted).

All defendants except NCA challenge personal jurisdiction. Defendants Smith, Huston, Hochstein, Fletchall, Emmerich, Hyter, and IFS are not alleged to have taken any actions or reside in New York. Therefore, personal jurisdiction can only exist over these defendants on a theory of agency -- specifically, that NCA acted as their agent in sending collection letters to Gerstle or Couser in New York. See Kreutter v. McFadden Oil Corp., 527 N.Y.S.2d 195, 196 (1988).

To establish agency, plaintiffs need to show that NCA engaged in conduct in New York "in relation to [the alleged] transaction for the benefit of and with the knowledge and consent of the . . . defendants and that they exercised some control over [NCA] in the matter." Id. at 199. Plaintiffs "must sufficiently detail [each] defendant's conduct so as to persuade a court that the defendant was a 'primary actor' in the specific matter in question" -- "conclusory allegations that the defendant controls the corporation" will not suffice. Karabu Corp. v. Gitner, 16 F. Supp. 2d 319, 324 (S.D.N.Y. 1998) (Sotomayor, J.). Courts "routinely" grant 12(b)(2) motions by individual employees where the allegations about the employee's participation in the specific matter at hand are "broadly worded

9

and vague." Id. at 324-25 (no personal jurisdiction over individuals who "directed" company employees to coerce travel agencies not to do business with the plaintiff); see also Time, Inc. v. Simpson, 2003 WL 23018890, at *2, *5-7 (S.D.N.Y. Dec. 22, 2003) (no personal jurisdiction over individual who, "through" several business entities he owned and managed, "mail[ed] infringing magazine subscription solicitations to residents of New York").

    The allegations here as to defendants Smith, Huston, Hochstein, Fletchall, Emmerich, Hyter, and IFS are similarly broadly worded and vague.  The allegations amount to generalizations that these defendants "oversaw" or "authorized" "illegal policies" not described in any factual detail.  This lack of specificity is highlighted by, for example, the use of the same boilerplate description for the actions of Smith, Huston, and Fletchall.  Nothing in the Complaint indicates that any of these individuals or IFS were "primary actors" in the specific matter at hand -- the collection letters sent to Gerstle and Couser.  The fact that many of these individuals allegedly applied for NCA's debt collection licenses in New York does not alter this conclusion.  Such conduct is too remote to the specific communications from NCA to plaintiffs to make these individual defendants "primary actors" in the alleged unlawful conduct.

10

As to defendant Fagan, however, the allegation that her typewritten signature appeared on the letters to Gerstle in New York is a prima facie showing of personal jurisdiction over her directly (as opposed to through an agency theory). The New York long arm "is a 'single act statute' and proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." Kreutter, 527 N.Y.S.2d at 198-99. Thus, where the claim is one of unlawful debt collection, the attempted collection effort in New York is enough to confer jurisdiction. See, e.g., McQueen v. Huddleston, 2014 WL 1716244, at *2-3 (W.D.N.Y. May 1, 2014) (finding personal jurisdiction over nonresident actionable based on one collection letter and two telephone calls); see also Sluys v. Hand, 831 F. Supp. 321, 324 (S.D.N.Y. 1993) ("Where an alleged debtor . . . receives documents from a person purporting to be a debt collector located elsewhere, and the transmittal of those documents is claimed to have violated the [FDCPA], suits may be brought where the debtor . . . receive[s] the communications."). Because Fagan's collection letters sent to New York are directly related to -- indeed, the crux of -- Gerstle's claim, jurisdiction is proper under C.P.L.R. 302(a)(1).

11

The second, due process, prong of the personal jurisdiction analysis assesses 1) "minimum contacts" and 2) "reasonableness." Only in the "rare" case will C.P.L.R. 302(a)(1) be satisfied but not due process. Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 732 F.3d 161, 170 (2d Cir. 2013).

The minimum contacts test is met if the defendant "purposefully availed itself of the privilege of doing business" in New York. Licci, 732 F.3d at 170. Where the "lawsuit arises out of defendant's contacts with the forum state in connection with his debt collection activities," the Court's jurisdiction is "specific," as opposed to "general," and "the test for minimum contacts is less stringent." McQueen, 2014 WL 1716244, at *4. Fagan's debt collection letters addressed and sent to New York satisfy the required minimum contacts. See, e.g., Sluys, 831 F. Supp. at 324-25; Sisler v. Wal-Mart Stores, Inc., 2003 WL 23508105, at *1 (W.D.N.Y. Dec. 24, 2003).

Although defendants' briefs include no argument on the matter, Fagan submits an affidavit with the motion stating that she "did not draft or create" the letters to Gerstle. This assertion does not undermine plaintiffs' prima facie showing of purposeful availment. New York has rejected the fiduciary shield doctrine, making clear that individuals are not to be insulated from jurisdiction for acts performed in a corporate capacity. Kreutter, 71 N.Y.2d at 470-72. Whatever the internal

12

processes for drafting collection letters at NCA may be, it is inescapable that Fagan's name appears at the bottom of the correspondence that is the focal point of Gerstle's allegations. Given that any doubt at this stage of the proceedings is resolved in favor of plaintiffs, Fagan has purposefully directed collection letters to a resident of New York by putting her name as the author at the end of the letters.

As to "reasonableness," the Supreme Court has stated that "[w]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 477 (1985). Fagan has presented no such other considerations.

Accordingly, only Fagan -- and NCA, which does not challenge jurisdiction -- remain defendants in the case.

### C. Motion to Dismiss Pursuant to Rule 12(b)(6) for Failure to State a Claim

It is necessary to consider the 12(b)(6) motion only as to the remaining defendants, NCA and Fagan. Because Count IV, RICO, is not alleged against those two defendants, there is no need to address it.

### 1. COUNT I -- Fair Debt Collection Practices Act ("FDCPA")

As a threshold matter, defendants argue that the FDCPA claim is time-barred because when it was dismissed with leave to amend on June 26, 2014, the limitations period continued to run. Defendants cite in support In re Palermo, 739 F.3d 99, 105 (2d Cir. 2014), which states only that when "a suit [is] dismissed without prejudice," the suit "is treated for statute of limitations purposes as if it had never been filed." Palermo is of no relevance here, where specific claims were dismissed but not the entire suit, and defendants' untimeliness argument is rejected.

The FDCPA prohibits certain conduct by a "debt collector," defined as

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C.A. § 1692a.  The FDCPA forbids debt collectors from, among other things, making a "threat to take any action that cannot legally be taken."  15 U.S.C.A. § 1692e(5).

Although the Second Circuit has not addressed the issue, district courts have found that individual employees of a debt collection agency may be liable as "debt collectors" where they "personally engage[] in the prohibited conduct."  Krapf v.

14

Prof'l Collection Servs., Inc., 525 F. Supp. 2d 324, 327 (E.D.N.Y. 2007). Indeed, the statutory definition broadly applies to "any person." 15 U.S.C.A. § 1692e(5). As a result, sending debt collection letters can be sufficient to qualify one as a "debt collector." See Ohlson v. Cadle Co., 2006 WL 721505, at *3 (E.D.N.Y. Mar. 21, 2006) (personal liability for employee who sent two collection letters); see also Hoffman v. GC Servs. Ltd. P'ship, 2010 WL 9113645, at *8 (E.D. Tenn. Mar. 3, 2010) (employees who left phone messages about collecting debt could be liable under FDCPA).

NCA does not move to dismiss Count I. As to Fagan, her typewritten signature appears on the letters sent to Gerstle that demand payment of allegedly usurious debt. Because usurious debt is void under N.Y. Gen. Oblig. Law § 5-511, attempting to collect such debt constitutes an unlawful threat under the FDCPA. Drawing all reasonable inferences in favor of plaintiffs, Fagan's name on the threatening communications is enough to demonstrate her personal engagement as a "debt collector" in violation of the FDCPA. The motion to dismiss Count I is denied.

### 2. Count II -- N.Y. Gen. Bus. Law § 349 (deceptive business practices)

A Section 349 claim must allege 1) "that the challenged act or practice was consumer-oriented," 2) "that it was misleading

in a material way," and 3) "that the plaintiff suffered injury as a result of the deceptive act." Stutman v. Chem. Bank, 95 N.Y.2d 24, 29 (2000). As to the third element, a plaintiff must have been "personally misled or deceived" to suffer injury "as a result" of the defendant's deception. LaCourte v. JP Morgan Chase & Co., 2013 WL 4830935, at *10 (S.D.N.Y. Sept. 4, 2013) (no § 349 claim where debt collector's communication did not mislead debtor into paying money).

Only plaintiff Couser brings the § 349 claim. He alleges that NCA presented a "telephone check" for $125 to his bank and that $125 was deducted from his account, but that he "did not authorize the telephone check." Accordingly, Couser has not alleged that he was "personally misled" into paying NCA. Regardless of whether "the check is also a false representation to the bank," as plaintiffs' brief asserts, Couser has nonetheless failed to indicate that he was injured "as a result of" a misrepresentation made to him personally. Count II is dismissed.

### 3. COUNT III -- N.Y. Gen. Oblig. Law § 5-501 et seq. (usury)

New York's civil usury law prohibits a lender from charging more than sixteen percent interest on a loan, subject to certain exceptions not relevant here. N.Y. Gen. Oblig. Law § 5-501;

16

N.Y. Banking Law § 14-a(1).  Such qualifying usurious debt "shall be void."  N.Y. Gen. Oblig. Law § 5-511.

Plaintiff Couser brings Count III against only NCA.  Couser alleges that NCA sent him a letter attempting to collect debt that carried an interest rate over thirty-two percent.  Given that rate of interest, Couser has stated a claim for usury.  The motion to dismiss Count III is denied.

### III. CONCLUSION

The motion to dismiss for lack of personal jurisdiction is granted as to IFS and all individual defendants except Fagan.  Personal jurisdiction over NCA is unchallenged.  Count II, N.Y. Gen. Bus. Law § 349, is dismissed.  Count IV, RICO, is dismissed because there is no jurisdiction over the defendants named in that count.  Count I, FDCPA, will proceed against NCA and Fagan, and Count III, N.Y. Gen. Oblig. Law § 5-501 et seq., will proceed against NCA.

SO ORDERED.

Dated:    New York, New York
          January 6, 2015

                                        S/_____
                                           MIRIAM GOLDMAN CEDARBAUM
                                           United States District Judge